# IN THE COURT OF APPEALS OF IOWA

No. 17-1461
Filed December 6, 2017

**IN THE INTEREST OF J.E.,**
**Minor Child,**

**C.H., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Boone County, James B. Malloy, District Associate Judge.

An incarcerated father appeals the termination of his parental rights to his one-year-old daughter. **AFFIRMED.**

Matthew A. Mauk of Mauk Law Office, Ames, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.

Ashley Michelle Sparks of Cooper, Goedicke, Reimer and Reese, P.C., West Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A father, Caleb, appeals the termination of his parental rights in his one-year-old daughter, J.E.  The Iowa Department of Human Services (DHS) took custody of J.E. based on her mother's methamphetamine use.  On appeal, Caleb challenges the statutory grounds for termination, arguing J.E. was never removed from his care because he was incarcerated for her whole life.

After independently reviewing the record, we reach the same conclusion as the juvenile court regarding the termination of Caleb's parental rights.[1]  The State satisfied the removal element of the statute.  Moreover, Caleb cannot parent his child from prison and has not met the DHS expectations for establishing a relationship with J.E.

## I.  Facts and Prior Proceedings

J.E. came to the attention of the DHS in May 2016 after the mother's parole officer reported the mother tested positive for methamphetamine and admitted to caring for J.E. while under the influence of the illicit drug.  The DHS contacted the mother, and she consented to the removal of J.E.  The juvenile court entered an order temporarily removing J.E. from the mother's custody.

Caleb was in prison when J.E. was born and remained in prison throughout these proceedings.  Once the DHS confirmed paternity, social worker Tammy Miller tried to set up visitation between Caleb and J.E.  But Miller was unable to

---

[1] Our review is de novo.  *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome.  *See id.*  Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

schedule father-daughter interactions because the prison required Caleb to complete a domestic-abuse class first and he failed to do so.[2] After a second inquiry, Caleb's prison counselor, Doug Fliehe, informed Miller that Caleb could not have visitors under the age of eighteen. While in prison, Caleb provided no financial support for J.E. and did not try to connect with J.E. in any way.

The State filed a petition to terminate parental rights in December 2016. At the termination hearing, Miller testified about her efforts to involve Caleb in J.E.'s life. Fliehe testified about Caleb's progress in prison. He noted the prison considered Caleb a security risk due to his poor conduct. Because of his poor conduct, Caleb could be transferred to a more restrictive setting—making any potential visitation more difficult. According to Fliehe, Caleb's misdeeds and potential transfer also reduced Caleb's chances for parole.

In August 2017, the juvenile court terminated Caleb's parental rights in J.E. under Iowa Code section 232.116(1)(e) and (h) (2017).[3] Caleb now appeals.

## II.      Analysis of Father's Claims

Caleb challenges both grounds for termination cited by the juvenile court.[4] To affirm, we need to find facts to support just one of the grounds. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). We focus our analysis on paragraph (h).

Under that paragraph, the State must prove:

---

[2] Caleb was on the waiting list for the domestic-abuse class. But his prison counselor indicated Caleb remained on the waiting list as a result of being placed in administrative segregation for misconduct.

[3] The mother's rights were also terminated but are not at issue in this appeal.

[4] Caleb's petition on appeal argues the court erred in terminating his rights under paragraphs (e) and (f), but his rights were not terminated under paragraph (f); they were terminated under paragraphs (e) and (h).

(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

Caleb only challenges the third element, claiming the juvenile court erred in concluding J.E. was removed from his physical custody. Citing *In re C.F.-H.*, 889 N.W.2d 201 (Iowa 2016), Caleb argues J.E. could not be "removed" because the child was never in his physical care, due to his incarceration.

But the juvenile court's removal order distinguishes this case from *C.F.-H.* *See In re K.H.*, No. 17-0384, 2017 WL 2189769, at *1 (Iowa Ct. App. May 17, 2017) (noting the father was incarcerated for the entirety of the child's life and the child was formally removed due to the mother's drug use). "In *C.F.-H.*, no removal occurred; the child remained in the custody of the mother throughout." *In re C.H.*, No. 16-2179, 2017 WL 1278368, at *3 (Iowa Ct. App. Apr. 5, 2017). Physical removal from the mother is sufficient to start the statutory timelines counting toward termination as to either parent. *See In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *3 (Iowa Ct. App. Mar. 22, 2017).

Caleb argues we should disregard our previous conclusions because he will discharge his sentence within two years and J.E. is in family foster care. But these facts do not affect our decision whether a child has been statutorily removed from

a parent's physical custody. The State proved all four statutory elements of section 232.116(1)(h)—including removal.

To the extent Caleb questions whether termination is in J.E.'s best interests under Iowa Code section 232.116(2) or whether permissive factors weigh against termination under section 232.116(3), we affirm the juvenile court. That court decided termination was in J.E.'s best interests "so that she may be adopted." We agree J.E.'s physical, mental, and emotional needs can be best met by continued placement with her foster parents. Iowa Code § 232.116(2).

While Caleb may be eligible for parole in the foreseeable future, given his poor conduct in prison and the prison counselor's assessment, Caleb can offer no guarantee he will be released anytime soon. Should he serve the entirety of his sentence, J.E. would be over three years old when Caleb is released.[5] It is not in J.E.'s best interests to wait for permanency while her father struggles to get his own life together. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012).

**AFFIRMED.**

---

[5] Caleb's tentative discharge date is September 25, 2019.