**IN THE COURT OF APPEALS OF IOWA**

No. 17-0384
Filed May 17, 2017

**IN THE INTEREST OF K.H.,**
**Minor child,**

**STATE OF IOWA,**
    Appellant.

_____

    Appeal from the Iowa District Court for Story County, Stephen A. Owen,

District Associate Judge.


    The State of Iowa appeals an order dismissing a petition for the

termination of a father's parental rights.  **REVERSED AND REMANDED.**


    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellant State.

    Mark J. Olberding of Olberding Law Office, Nevada, for appellee father.


    Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Iowa Code section 232.116(1)(h) (2016) sets forth one of several grounds to terminate the rights of an unfit parent. The provision, in part, requires the State to prove "[t]he child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." Iowa Code § 232.116(1)(h)(3). In *In re C.F.-H*, the Iowa Supreme Court construed this language "to require a change from physical custody to lack of physical custody" rather than "simply . . . absence of custody."[1] 889 N.W.2d 201, 207 (Iowa 2016).

In light of *C.F.-H.*, the district court in this case reconsidered a decision to terminate an incarcerated father's parental rights to his child. After concluding the State failed to establish the child was removed from the father pursuant to Iowa Code section 232.116(1)(h), the court ordered the dismissal of the State's petition against him.

On appeal, the State argues the child was removed from the father and, alternatively, the child's removal from the mother triggered the move toward termination as to both the mother and the father. We agree with the State on both points.

Our de novo review of the record reveals the following facts and proceedings. The child was born in late 2014. A year earlier, the father was adjudged guilty of possession of methamphetamine (second offense) and was

---

[1] The court examined identical language in Iowa Code sections 232.116(1)(e) and (f). The State concedes subsection (h) should "be interpreted and applied in a consistent manner."

placed on probation. He failed to comply with certain terms of his probation and the district court revoked his probation less than two weeks after the child's birth. The father was incarcerated both before and after the child's birth. He never had physical custody of the child.

When the child was ten months old, the State sought to have him removed from his mother's care based on her use of illegal substances and her failure to cooperate with a safety plan. Following a hearing, the district court entered a formal order "temporarily remov[ing] [the child] from the care and custody of his mother . . . and his alleged father."[2]

It is this temporary removal order that distinguishes K.H.'s case from *C.F.-H.* As we recently stated, "In *C.F.-H.*, no removal occurred; the child remained in the custody of the mother throughout." *In re C.H.*, No. 16-2179, 2017 WL 1278368, at *3 (Iowa Ct. App. Apr. 5, 2017). Here, in contrast, the district court formally removed the child from the physical custody of the father and the mother. The formal removal of the child from the father effected a "dynamic change of circumstance" as envisioned in *C.F.-H.* See 889 N.W.2d at 206. The statutory "removal" requirement was satisfied as to the father.[3]

We would reach this conclusion even if the district court had not referred to the father because there was a formal order temporarily removing the child from the mother. We recognize the Iowa Supreme Court left open "the question of whether a removal of the child from one parent is sufficient to support

---

[2] Paternity testing later confirmed the father's status as biological parent.
[3] Recently, our legislature unsuccesfully attempted to modify the removal language contained in the termination provisions. *See* H.F. 320, 87th Gen. Assemb., Reg. Sess. (Iowa 2017).

termination of parental rights of a noncustodial parent." *See id.* at 207 n.2; *see also id.* at 213 n.7 (Mansfield, J., dissenting) ("Unfortunately, the majority opinion creates additional doubt when it leaves open the possibility in a footnote that even a 'dynamic' removal from a custodial parent would be insufficient to meet the statutory removal requirement as to the *noncustodial* parent. Under this scenario, despite a CINA adjudication and a child's relocation from the custodial parent to foster care, the clock would not start running as to the noncustodial parent. I do not think the majority intends this result, but the reasoning in its opinion does not preclude it."). But this court recently resolved the unanswered question. In a case with virtually identical facts—an incarcerated father and removal of the child from the mother based on her drug use—we stated "removal of the child from the mother [was] sufficient to support termination of the father's parental rights." *In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *3 (Iowa Ct. App. Mar. 22, 2017). We cited the supreme court's construction of "the word 'parents' to mean plural or singular." *Id.* at *4 (citing *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992)). We concluded, "Because the child had been removed from the mother's care for the requisite period of time, . . . it was not necessary for the State to prove the child was removed from the father's care." *Id.*

We reached the same conclusion in *In re C.H.* Again, we construed the language "removed from the physical custody of the child's parents" "to include both singular and plural," and we stated the term "parents" "includes removal from either parent." 2017 WL 1278368, at *3.

We are persuaded by the reasoning of *In re Z.G.* and *In re C.H.*  In the State's words, K.H.'s formal removal from his mother was "sufficient to start the statutory timelines counting toward termination as to both" parents.

As for those statutory timelines, there is no dispute that they were satisfied.  Accordingly, we reverse the district court ruling on the father's motion to reconsider the termination decision and remand for reinstatement of the termination order, without prejudice to the father's right to appeal the termination order.

**REVERSED AND REMANDED.**